Argued January 22; affirmed February 25, 1936.

## McBRIDE *v.* McBRIDE ET AL.
### (54 P. (2d) 838)

L. E. *Schmitt,* of Portland (J. R. Callahan, of Portland, on the brief), for appellant.

B. G. *Skulason* and *Roscoe P. Hurst,* both of Portland, for respondent Jacob Weber.

ROSSMAN, J. December 1, 1919, the defendant W. W. McBride signed three notes, payable to the plaintiff Cora E. McBride, his former wife, and secured their payment by a mortgage which described six fractional lots located in the city of Portland, two of which are in Lane's Addition, two in Holladay's Addition and two in block 265 of Aiken's Addition. Those properties are not involved in the issues presented by this appeal. One of the notes was in the denomination of $2,000, and the other two were each in the denomination of $5,000.

In February of 1925 the $2,000 note had been paid, but the two $5,000 notes were not yet due. Accrued interest of $231.08 was unpaid and some taxes levied upon the mortgaged property were delinquent. February 3, 1925, W. W. McBride, as party of the first part, and Cora E. McBride, as party of the second part, signed an agreement, the substance of which we shall now state. After reciting the facts above mentioned, it states: "The party of the first part finds it necessary at this time to obtain a priority as against said mortgage so far as the same concerns" the two fractional Lane's Addition lots "so that he may raise the sum of

$2,500 on mortgage'' on those lots. It further states that he owned lot 6, block 304, Aiken's Addition. The document then continues that McBride, the mortgagor, ''agrees that for the privilege of having said priority as against said mortgage of the party of the second part for the property above mentioned, that he will pay the party of the second part One Thousand ($1,000.00) Dollars on the principal of said Ten Thousand ($10,000.00) Dollars notes, and will pay up all of the back and accruing taxes on the real property on which said party of the second part holds said mortgage and will pay up all of the interest in arrears and accruing on said Ten Thousand ($10,000.00) Dollars, and to secure the payment thereof will assign to the party of the second part the rentals coming due on all of said real property in the City of Portland, in Multnomah County, Oregon, as they mature until said thousand dollars and said accrued and accruing interest and said taxes shall have been fully paid, and as security for the payment of said rentals to the party of the second part as the same are collected by the agent of the party of the first part. The party of the first part, together with his present wife, have executed and will execute and deliver to the party of the second part a mortgage on Lot —— which mortgage will be a second mortgage and subject only to a first mortgage of Two Thousand ($2,000.00) Dollars, now of record against the real property. . . .''

The $2,000 mortgage just mentioned was held by one Evelyn I. Morse.

The agreement bound the plaintiff to apply the rentals collected from the property to (1) the discharge of accrued interest; (2) the payment of the taxes; (3) the discharge of interest accrued in the meantime; (4) the payment to herself of the aforementioned sum of $1,000; and (5) the discharge of taxes and interest which had accrued in the meantime. The instrument then provided that after all of these sums had been paid

"she (the plaintiff) will then, at the expense of the party of the first part, release this mortgage".

Next, it provided:

"If for any reason the party of the first part shall refuse to cause said rentals to be paid over to the party of the second part promptly and during each month, including the present month of February, 1925, then and in that event the party of the second part may foreclose this mortgage as additional security for the payment of said sum of Ten Thousand ($10,000.00) Dollars, accrued and accruing interest, taxes and other charges payable against the real properties described in the first mortgage above mentioned, and in this mortgage."

This agreement was recorded in the miscellaneous records April 9, 1927. Simultaneously with the execution of that instrument, which, it will be observed, refers to itself as a mortgage, McBride and his wife delivered to the plaintiff a mortgage which, however, was unaccompanied by a note. From it we quote:

"WITNESSETH: That said mortgagors, in consideration of the agreements of Cora E. McBride and of the said W. W. McBride contained in another instrument of even date herewith and executed contemporaneously herewith, do hereby grant, bargain, sell and convey unto said mortgagee"

the aforementioned lot 6, block 304, Aiken's Addition. It will be recalled that that lot is not mentioned in the first mortgage, but is mentioned in one of the "Whereas" clauses of the agreement of February 3, 1925, as additional property owned by McBride. Continuing, the mortgage recites:

"This mortgage is intended to secure the payment of certain accrued and accruing interest, for the sum of One Thousand ($1,000.00) Dollars, as principal, and taxes and other charges as provided in a contract of even date herewith. . . . If said W. W. McBride

shall keep and perform the covenants herein contained and shall pay said accrued and accruing interest and said sum of One Thousand ($1,000.00) Dollars, principal, and said taxes, in the manner as provided in said contract above referred to, then and in that event this mortgage shall be cancelled, . . . ."

This mortgage was recorded in the mortgage records April 4, 1925. McBride then obtained a loan of $2,500. Manifestly, the agreement and the mortgage must be construed as one instrument.

The next incident of which we need take notice occurred in the latter part of 1930. One thousand dollars remained unpaid upon the Evelyn I. Morse mortgage and she was demanding payment. Apparently McBride's only method of meeting her demand was to borrow the needed sum. The defendant Weber was willing to loan him the needed sum upon his note, provided its payment was secured by a first mortgage upon the aforementioned lot 6, block 304, Aiken's Addition, which, it will be recalled, is mentioned in the mortgage delivered to the plaintiff on February 3, 1925. At this juncture McBride called upon the plaintiff and what then occurred is narrated by him in the following part of his testimony: "So I went immediately up to her house, you know, and told her I needed to get some money, and I didn't think I could get it unless she released this mortgage that she had on it and then subsequently put it in force again after the other fellow was first. Also there was a certain contract in existence with her, and agreement, that she was to collect all rents from that house, and several more. I wanted her to cancel that contract in regard to those rents, that I wanted to collect them myself. She didn't say anything, whether she would or whether she wouldn't, but anyhow I told her what I wanted and I

went off.'' McBride was the only witness. The plaintiff did not testify. September 12, 1930, plaintiff signed the following entry upon the margin of the miscellaneous record where the agreement was recorded:

"Full satisfaction of the within agreement is hereby acknowledged this 12th day of September, 1930, at 4:45 p. m.''

Her signature was attested by the county clerk. No money was paid to her.

Next, McBride borrowed $1,200 from the defendant Weber upon his note, secured by a properly recorded mortgage executed October 7, 1930, which described lot 6, block 304, Aiken's Addition. Two hundred dollars of the borrowed money was used to discharge accumulated taxes, and $1,000 discharged the balance unpaid upon the Morse mortgage. When the plaintiff instituted this suit to foreclose her mortgages, defendant's $1,200 mortgage was also in default; but its amount had been reduced to $1,000.

The above are the facts. We come now to determine the question of priority. The mortgage of February 3, 1925, as has already been stated, was unaccompanied by any note, but it acknowledged that the mortgagor was indebted to the plaintiff for accrued interest, accruing interest, and $1,000 principal money. For a complete description of the debt this mortgage referred to "a contract of even date herewith" signed by the mortgagor and the mortgagee. By reference to that contract, it will be observed that it did not increase McBride's debt to the plaintiff, but merely segregated a portion of the old debt and provided a new method for its discharge. The portion of the debt which the parties segregated for this treatment consisted of (1) all accrued interest; (2) $1,000 of principal money; and (3) all interest which would accrue while the above

sums, plus delinquent and current taxes, were being liquidated by the rent money. Thus, the amount and terms of payment of the debt secured by the mortgage of February 3, 1925, is expressed in the agreement signed on the same day. In our opinion, the intention of the parties is done no violence if we deem the agreement as a substitute for the note which generally accompanies mortgages.

When McBride called upon the plaintiff in the latter part of 1930 he made two requests: (1) that she waive the priority of her mortgage in lot 6, block 304, Aiken's Addition; and (2) that she permit him to resume the collection of rents from the mortgaged properties. Her only answer was the marginal release.

If the plaintiff's purpose in entering the marginal satisfaction was to subordinate the lien of the mortgage of February 3, 1925, to the lien of the mortgage which McBride contemplated executing, her position was not prejudiced through the events that followed because, as already mentioned, $200 of Weber's money discharged delinquent taxes against the properties mentioned in her mortgages, and $1,000 was used to discharge the Morse mortgage against lot 6, block 304, Aiken's Addition. In other words, prior to the Weber mortgage the plaintiff had a second mortgage upon the real property just mentioned. If the marginal satisfaction was not intended as a waiver of plaintiff's priority, then the plaintiff now has a first lien, although it was the defendant's (Weber's) money that gained it for her.

■■ In this state a mortgage is merely a lien and may be extinguished or waived. We now quote from Jones on Mortgages (8th Ed.), § 742:

"The parties may, as between themselves, make a valid agreement, though it be verbal only, that one of

two mortgages shall be prior to the other, and the order of record is then immaterial unless they are subsequently assigned to other persons who have no notice of the agreement; . . .

"A mortgagee has an unquestionable right to waive his priority in favor of a subsequent mortgagee. If a prior mortgagee releases his mortgage in order to enable the mortgagor to raise money upon the same property, with which to make improvements thereon, such mortgagee can not afterward be heard to object that the money was raised by the second mortgagee upon discount of other paper of the mortgagor, or that the mortgagor failed to expend the money as he had agreed."

The following is taken from 41 C. J., Mortgages, p. 504, § 432:

"It is perfectly competent for a mortgagee to waive or release his lien in favor of a junior encumbrancer; and that this will not extinguish the elder mortgage, but will merely postpone it to the junior. So also he may waive his lien in favor of a person who advances money to the mortgagor to enable him to improve the property or replace burned buildings, the enhanced value of the security being a sufficient consideration, or he may release the lien wholly, in order to enable the mortgagor to sell the property with a clear title, . . . ."

■ When the plaintiff entered the marginal satisfaction she must have intended that some consequences should ensue from her act. The conclusion is inescapable that she was prompted by McBride's (the mortgagor's) request. If we deem the agreement as the equivalent of a note, then since the mortgage merely created a lien, or security for the debt, the satisfaction or cancellation of the debt extinguished not only the debt but also the mortgage. But we are satisfied that the parties did not intend that the debt should be cancelled. We arrive at this conclusion because no extinguishment of

the debt was requested and because no money was paid. We can not conclude that by her cancellation she intended only to terminate her right to collect the rent from the mortgaged properties because McBride asked for more than that, and because she continued to collect the rent after she had made the marginal entry. Before the plaintiff signed the satisfaction, McBride had explained to her that he wanted the contract cancelled so that he could place a mortgage upon the property ahead of plaintiff's mortgage.

We have dismissed the above two possibilities. The only remaining one is whether the plaintiff intended that the marginal release should be deemed a waiver of the priority of her mortgage. This is what she was asked for. The events that followed indicate that Weber, an innocent party, construed the marginal release, an equivocal act, as a waiver of her priority. His interpretation was a reasonable one. We believe that the marginal entry should be interpreted as a subordination of plaintiff's mortgage to the new one which McBride was contemplating when he made his request.

CAMPBELL, C. J., and KELLY and BELT, JJ., concur.